### WOLFFARTH v. DE LAY et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 18, 1911. Rehearing Denied Dec. 23, 1911.)[1]

1. TAXATION (§ 545*)—TAX SALES—STATUTES —IMPLIED REPEAL.

Acts 1895, c. 42, providing for the collection of taxes by local officers, etc., did not repeal Sayles' Ann. Civ. St. 1897, arts. 5144–5146, originally enacted in 1879, since the act of 1895 only sought to regulate the collection of taxes such as had been and were thereafter to be assessed and collected by local officers, who, before the passage of that act, were not empowered to collect any of the taxes, provision for the collection of which was made by articles 5137–5153, also dating from 1879.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 545.*]

2. TAXATION (§ 658*)—TAX SALES—NOTICE— DESCRIPTION.

Where land was described in a notice of tax sale as belonging to "C. & M. R. R. Co.," it was a sufficient description of the owner without other explanation, in the absence of evidence that there were other lands in the county to which the abbreviation might apply.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1335; Dec. Dig. § 658.*]

3. TAXATION (§ 658*)—TAX SALE—NOTICE— ADDRESS.

Under Sayles' Ann. Civ. St. 1897, art. 5144, providing for the sale of delinquent tax lands in unorganized counties by the comptroller, after publication of notice of the amount due on each separate tract, giving such description of the land as he may be in possession of, and stating that on a specified date he will sell the land therein described, or so much as is necessary to pay the state and county taxes due and the cost of advertising the same, the notice need not be addressed to the owner or to the unknown owner or to the nonresident owner or owners.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1335; Dec. Dig. § 658.*]

4. TAXATION (§ 658*)—TAX SALE—NOTICE— DESCRIPTION OF OWNER.

Where land, patented to K., was sold to the state for taxes, but it did not appear that the patent had ever been recorded in the county records, the fact that the records of the Commissioner of the General Land Office at the capitol showed that a patent had been issued to K. in 1880 did not require the Comptroller to take notice that K. or his heirs still owned the lands and to describe them as belonging to him or them, in a notice of the sale of the lands for taxes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1335; Dec. Dig. § 658.*]

---

[1] Filed in the Court of Civil Appeals at Ft. Worth January 25, 1911, and transferred to this court July 1, 1911, by order of the Supreme Court.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**5. TAXATION** (§ 660*) — DELINQUENT TAX LANDS—SALE BY COMPTROLLER—NOTICE.

Under Sayles' Ann. Civ. St. 1897, art. 5144, providing for the sale of delinquent tax lands in unorganized counties, after publication of notice, the fact that a notice published contained a description of some 500 sections of land arranged in columns and printed in 26-point type did not render the notice void.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 660.*]

**6. TAXATION** (§ 658*) — DELINQUENT TAX LANDS — UNORGANIZED COUNTIES — SALE — NOTICE.

Though under Sayles' Ann. Civ. St. 1897, arts. 5144, 5145, providing for the sale of delinquent tax lands in unorganized counties, the Comptroller is only authorized to levy on and sell those lands owned by nonresidents at the time of the assessment, and section 5144 does not in terms or substance provide to whom the notice of sale shall be addressed, nor its form, a notice addressed to "all parties interested," and which contains all other necessary requisites, is sufficient.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1335; Dec. Dig. § 658.*]

**7. CONSTITUTIONAL LAW** (§ 285*) — TAX SALES—NOTICE—DUE PROCESS OF LAW.

The proceedings provided for by Sayles' Ann. Civ. St. 1897, arts. 5137–5153, relating to the sale of lands of nonresidents in unorganized counties for nonpayment of taxes, and the notice of sale prescribed thereby, when substantially complied with, constitute due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 897–903; Dec. Dig. § 285.*]

**8. ADVERSE POSSESSION** (§ 73*).— SCHOOL LANDS—PRE-EMPTION CLAIM.

Neither a pre-emption claim, nor an award under the public free school land laws, will support a claim of title under the three-year statute of limitations, at least until proof of occupancy has been made sufficient to entitle the proposed purchaser or his assigns to pay for the land and take perfect title thereto.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 73.*]

**9. TAXATION** (§ 766*)—TAX DEED — EXECUTION—ACKNOWLEDGMENT.

A tax deed, purporting to have been executed by the Comptroller, but never acknowledged, was inadmissible.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1528, 1529; Dec. Dig. § 766.*]

Appeal from District Court, Terry County; L. S. Kinder, Judge.

Trespass to try title by James R. De Lay and another against George C. Wolffarth. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Bean & Klett, for appellant. Randolph & Randolph, for appellees.

GRAHAM, C. J. This was an ordinary action of trespass to try title, begun in the district court of Terry county, by James R. De Lay and J. E. Lancaster, as plaintiffs, against Geo. C. Wolffarth, as defendant, on September 13, 1909. On October 25, 1909, defendant filed his answer in the court below, consisting of a plea of not guilty and the statute of three years' limitation. On Octo-

ber 25, 1910, a trial was had before a jury; but, after the introduction of testimony was concluded, the trial court peremptorily instructed the jury to return a verdict for the plaintiffs, which it did, and judgment was rendered accordingly.

The statement of facts shows that appellee introduced in evidence a patent bearing date February 18, 1880, issued by the state of Texas, to one Nelson Ketchum, conveying 640 acres of land, being patent No. 40, and covering survey No. 49, in block D—11, located by virtue of certificate No. 184, issued to Central & Montgomery Railroad Company, being the lands in controversy in this suit; that said Nelson Ketchum died in the state of Indiana, where he resided on December 9, 1880; and that plaintiffs below, appellees in this court, by regular chain of written transfer, showed themselves the owners of the land, unless their right and claim thereto be defeated by the title introduced by the defendant below, appellant in this court. The statement of facts also shows that appellant introduced as evidence the patent above mentioned, also such other evidence as was sufficient to support a sale of the lands in controversy to the state of Texas, by the Comptroller of Public Accounts of the State of Texas, for the taxes against said property for the year 1894 (except that the trial court excluded as evidence the certified copies of the paper with the certificate of publication attached, in which the notice provided for in article 5144, Sayles' Civil Statutes, had been published); also a deed from R. W. Finley, Comptroller of Public Accounts of the State of Texas, dated October 1, 1895, and conveying the lands in controversy to the state of Texas, the deed on its face setting out a history of the things which had been done as a basis for the sale of which the deed was evidence; said history, so stated, showing in detail that all things required by law had been done necessary to make the sale a legal one, including the fact that the publication in "The Weekly Gazette" had been made of the notice for the length of time as required in said article 5144.

Appellant also introduced in evidence, as shown by the statement of facts, the following written agreement: "It is admitted, by the plaintiffs, and agreed by the parties hereto, that the proof in this case shows that the land in controversy was on the 8th day of October, 1903, duly and regularly classified by the Commissioner of the General Land Office as dry grazing and appraised by him at $2.25 per acre; that the county clerk of Martin county, to which county Terry county was then attached for judicial purposes, was thereupon duly notified, in writing, to that effect; that entries of such classification and appraisement were duly made by said county clerk on his records as required by

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

law; that thereafter, to wit, on the 10th day of October, 1903, Ed O'Sullivan duly and regularly made his application and affidavit to the Commissioner of the General Land Office to purchase the land in controversy as additional land to his home tract on section 50, same block, certificate, grantee and county, under the law then in existence providing for the sale of public free school lands; that the land in controversy was within a radius of five miles of said home tract; that contemporaneously with the date of said application the said Ed O'Sullivan paid one-fourth of the purchase money, to wit, $36, to the state of Texas, and executed his obligation to the state for the balance of the purchase money, to wit, $1,404, with interest thereon at the rate of 3 per cent. per annum; that said application, oath and obligation were received by and filed with the Commissioner of the General Land Office on October 19, 1903; that thereupon, to wit, on the 23d day of October, 1903, the Commissioner of the General Land Office duly awarded the land in controversy to said Ed O'Sullivan; that on the 24th day of October, 1903, the Commissioner of the General Land Office notified and authorized the State Treasurer to receive and accept payments on said land under said application aforesaid; that on September 8, 1906, Ed O'Sullivan made proof of three years' occupancy and improvements to the extent of $1,500 on said home section, with three witnesses; that on October 20, 1906, certificate of occupancy issued to said Ed O'Sullivan; that the interest has been paid by said Ed O'Sullivan to November 1, 1909; that on the date the said Ed O'Sullivan made his application, to wit, the 8th day of October, 1903, he was in person an actual bona fide settler on the land in controversy, and continued to hold and use same and to remain in possession thereof until he sold same to defendant; that during all of said time said Ed O'Sullivan had held actual, visible, peaceable possession, adverse and hostile to the claims of all others; that on the 19th day of May, 1909, said Ed O'Sullivan sold the land in controversy, by general warranty deed duly signed and acknowledged, to the defendant for a consideration of $2,800; that from and since said time, up to the date of filing of plaintiffs' original petition on the 13th day of September, 1909, in this cause, defendant has had and held the same character of actual and hostile possession as that of Ed O'Sullivan. It is further agreed that during the years of 1894 and 1895 Nelson Ketchum's heirs were nonresidents of the state of Texas."

[1] Appellees insist in this court that the Act of April 13, 1895, p. 50, had the effect of repealing the law under which the Comptroller made the sale for taxes, and, as the act of 1895 became operative before the sale was actually made, it was a nullity, notwithstanding the other things, except the sale and execution of the deed by the Comptroller necessary to give it validity had been done before the act of 1895 took effect.

The deed bears date October 1, 1895, while the act of April 13, 1895, became operative on August 20, 1895. If therefore the act of 1895 repealed articles 5137 to 5153, or even repealed articles 5144 to 5146, inclusive, as they now appear in Sayles' Annotated Civil Statutes of 1897, we think the deed dated October 1, 1895, would be absolutely void as being the act of an officer in a matter about which he had no power to act. Especially do we believe this true in view of the provisions made in section 13 of the act of 1895, and we think this result would follow, even if some of the preliminary acts necessary to the sale had been performed before the act of 1895 took effect.

While we have been cited to no decision of our appellate courts, nor have we found one deciding this question, after a careful study of the evils sought to be remedied in said act of 1895, we have reached the conclusion that it did not repeal the law under which the Comptroller made the sale in controversy, being articles 5137 to 5163, inclusive, for the reason that the law of 1895 only sought to and does regulate the collection of taxes such as had been and were thereafter to be assessed and collected by local officers, while before the passage of the act of 1895 such officers were not empowered to collect any of the taxes, provision for the collection of which is made in articles 5137 to 5153, inclusive.

[2] Appellant insists, under one of his assignments of error, based on a proper bill of exception, that the trial court erred in excluding as evidence portions of copies of "The Weekly Gazette," a newspaper then published weekly at Ft. Worth, Tex., covering the publication made by the Comptroller, under the provisions of article 5144, the portions of the copies of said paper so excluded bearing dates 2d, 9th, 16th, and 23d of August, 1895, in so far as they affect the land in controversy, reading as follows:

"NOTICE OF SALE FOR TAXES.
[Size of type: 26 point.]

"By the Comptroller of Lands in Unorganized Counties.

"I, R. W. Finley, Comptroller of Public Accounts for the State of Texas, do hereby notify all parties interested that in accordance with the authority vested in me by an act to provide for the assessment and collection of taxes on lands and other property situated in the unorganized counties, and for the enforcement of the same, approved April 22, 1879, and which took effect July 24, 1879. I have this day levied upon each and every one of the tracts or parcels of land in the list herein given, in order to sell the same, or as much thereof as may be necessary for the payment of the state rev-

enue, state school and county taxes due and unpaid thereon as specified, and for the cost of advertising the same.

"In said list of lands levied on, and on which the taxes are due and unpaid for the year designated.

"1. The first division of this weekly newspaper shows the year for which the taxes are due.

"2. The second division shows the abstract number.

"3. The third division shows the scrip number or certificate number.

"4. The fourth division shows the survey number.

"5. The fifth division shows the block number.

"6. The sixth division shows the 'original grantee' of the tract.

"7. The seventh division shows the patentee.

"8. The eighth division shows the number of acres on which taxes are due and unpaid.

"9. The ninth division shows the class.

"10. The tenth division shows the date, number and volume of the patent.

"11. The eleventh division shows the assessed value of the land.

"12. The twelfth division shows the amount of the state tax.

"13. The thirteenth division shows the amount of the state school tax.

"14. The fourteenth division shows the amount of the county tax.

"15. The fifteenth division shows the amount total taxes due on each parcel of land described for the year set opposite in the first division. (The year set opposite is 1894.)

"All items in each line appertain and apply to the grant described in each line, and all tracts of land following the printed name of a county are situated in such county; and further, in the division headed 'Original grantee,' when the following initial letters appear, said letters designate original grantee as shown, to wit:

"C. C. S. D. & R. G. N. G. R. R. Co.— Corpus Christi, San Diego & Rio Grande Narrow Gauge Railroad Company.

"D. & W. R. R. Co.—Dallas & Wichita Railroad Company.

"M. K. & T. E. R. R. Co.—Missouri, Kansas & Texas Extension Railroad Company.

"G. C. & S. F. R. R. Co.—Gulf, Colorado & Santa Fé Railroad Co.

"T. C. R. R. Co.—Texas Central Railroad Company.

"H. & T. C. R. R. Co.—Houston & Texas Central Railroad Company.

"T. & P. R. R. Co.—Texas & Pacific Railroad Company.

"E. L. & R. R. R. R. Co.—East Line & Red River Railroad Company.

"T. & N. O. R. R. Co.—Texas & New Orleans Railroad Company.

"H. E. & W. T. R. R. Co.—Houston, East & West Texas Railroad Co.

"D. & S. E. R. R. Co.—Dennison & Southeastern Railroad Company.

"T. W. N. G. R. R. Co.—Texas Western Narrow Gauge Railroad Co.

### Terry County.

| | |
|---|---|
| Year for which taxes are due | 1894 |
| Abstract No. | 115 |
| Scrip or Certificate No. | 184 |
| Survey No. | 49 |
| Block Number | ... |
| Original Grantee | C. & M. R. R. Co. |
| Patentee | Nelson Ketchum |
| Acres | 640 |
| Class | Scrip |
| Patent | Date Feb. 18, 1880 Vol. 40; No. 55 |
| Value | 960 |
| State Tax | 1.44 |
| State School Tax | 1.20 |
| County Tax | 1.20 |
| Total Tax | 3.84 |

"I further notify all parties interested that I will offer each and every one of said parcels or tracts of land for sale, and will sell the same to the highest bidder for cash. The party who will pay the state and county taxes specified against each entry in said list, and cost thereon at the rate of one dollar for each line of space occupied in advertising each entry against which taxes are charged (Note: The above advertisement of the above described tract of land in 'The Weekly Gazette' was so arranged as to occupy only one line of space), for the least number of acres, being considered the highest bidder for cash, and the amount so bid off being considered the amount necessary to sell in order to satisfy the state and county taxes; said sale to be had in front of office of Comptroller of Public Accounts of the State of Texas, in the City of Austin, and will continue from day to day, Sundays and legal holidays excepted, between the hours of 8 o'clock a. m. and 4 o'clock p. m. commencing on the third day of September, 1895; said date being the first Tuesday in said month, and continuing until all of said lands are sold. Said sale will be made subject to all conditions of the act above specified, and in accordance with the terms thereof.

"[Signed] R. W. Finley,

"Comptroller of Public Accounts, State of Texas."

The grounds of the objections urged by appellees to the introduction of which as evidence, and which were sustained by the trial court, being: "(1) That it was no legal notice to the owner of the land; (2) that it was addressed to the owner or unknown owner; (3) that the patent having been issued, was notice to the state that the patentee was the owner, or, if dead, that his heirs owned the land; and (4) that the notice included some 500 sections of land, made in small print and in such shape as to give notice to the true owner that his land was to be sold

to pay the taxes, and no sufficient amount of stated taxes."

The description of the lands, as contained in the publication of notice, as to the original grantee, it will be observed, is "C. & M. R. R. Co.," and the key given in other portions of the notice, explaining abbreviations used therein, fails to explain what is meant by "C. & M. R. R. Co."; but, in the absence of evidence showing that there were other lands in Terry county to which the abbreviation used might apply, under the reasoning in the case of Slaughter v. City of Dallas, 101 Tex. 315, 107 S. W. 48, and Eustis et al. v. City of Henrietta, 90 Tex. 468, 39 S. W. 567, we think the notice, even without the key explaining the meaning of the abbreviation "C. & M. R. R. Co.," sufficient description of the land advertised to support a valid sale thereunder.

[3] The notice was not addressed "to the owner," nor to the "unknown owner," nor was it in terms addressed to the "nonresident owner or owners," nor does article 5144 so require.

[4] The statement of facts before us does not show that the patent to Nelson Ketchum has ever been recorded in either Martin or Terry counties; nor does it show that, at any time prior to the award of the land to Ed O'Sullivan in 1903, any kind of conveyance of said land had been placed of record in either Martin or Terry counties; and we do not think the fact that the records of the Commissioner of the General Land Office at Austin shows that a patent was issued to Nelson Ketchum in 1880 sufficient to require the Comptroller to take notice that he or his heirs still owned the lands when he advertised same for sale. Aside from what the patent on its face shows, no evidence appears in the record showing that the records even at Austin show that the lands were ever even patented to Nelson Ketchum or any other person.

[5] We do not think that the fact that the notice as published contained the description of some 500 sections of land arranged as indicated in the bill of exception herein copied, the notice being in the size of type indicated, in said bill, would render the notice void.

While we are aware that it is the law, and that sound public policy requires a reasonably strict construction of, as well as a strict compliance with, statutory provisions, which may result in depriving a citizen of his property for failure to pay taxes thereon, after a close inspection of the notice published and above copied, and a comparison thereof with the requirements of articles 5137 to 5146, and especially with article 5144, we have reached the conclusion that the trial court erred in excluding as evidence the portions of said paper containing said notice, because of the objections urged by appellee thereto.

[6] Article 5144 does not in terms or substance provide to whom the notice shall be addressed, nor in what form it shall be gotten up, and while it is true that the only lands the Comptroller is authorized to levy on and sell, under the provisions of articles 5144 and 5145, are those located in unorganized counties and owned by nonresidents thereof at the time of assessment, we think a notice addressed to "all parties interested," and which contains all other necessary requisites, should be held sufficient, though we have been cited to no case, nor have we found one, where either our Supreme Court or the Courts of Civil Appeals have had occasion to pass on the sufficiency of the notice provided for in article 5144.

We are not unmindful of the fact that our courts have held, in construing articles 5232a to 5232q of the Act of 1897, page 132, and which provides for suit for taxes and foreclosure of liens on land therefor, by local authorities, the notice provided for therein must be in strict compliance with the provisions of that statute, still we have found no decision requiring that the notice contain anything or be addressed to any particular class of owners except in the manner and to those specifically named in the statute itself and as required by the statute as to notice.

In our judgment, were a court to read something into the statute not provided for, either in express terms or by necessary implication, and then enforce it, to that extent such decision would be judicial legislation; if the notice provided for by legislative enactment is not sufficient as notice to the landowner, the statute should be held void as depriving the citizen of his property "without due process of law," as was held in Eustis et al. v. City of Henrietta, 90 Tex. 468, 39 S. W. 567.

In the case of Young v. Jackson, 50 Tex. Civ. App. 351, 110 S. W. 74, it was pointedly held that the provisions of articles 5232a to 5232q of the Act of 1897, in so far as they apply to the notice to the landowner, as therein required, were constitutional and valid, and, so far as we are aware, no decision can be found by our courts intimating a contrary view, as to the phase thereof under discussion, and, though we are not unmindful of the holding of the Supreme Court, in the case of Eustis et al. v. City of Henrietta, 90 Tex. 468, 39 S. W. 567, it will be observed, however, that article 5150 is almost an exact copy of the provisions of the Constitution, art. 8, § 13.

While in the cases of Scales v. Wren (Sup.) 127 S. W. 164, Blanton v. Nunley et al., 55 Tex. Civ. App. 427, 119 S. W. 881, and others that might be cited on the same point, sales were held invalid, the decision in each instance is based on a failure of the proper officer to comply with some positive provision of the statute under which he purported to act.

When we consider the facilities for information on the part of local officers as to the ownership of lands in their counties, as well as in unorganized counties attached thereto for judicial purposes as compared with those obtainable by the Comptroller, the wisdom of the Legislature in making the distinctions as to the form and substance of the notice in proceedings under the provisions of articles 5232a to 5232q of the Act of 1897 and these provided for under articles 5137 to 5153, inclusive, of Sayles' Ann. Civ. St. 1897, becomes apparent; the fact is, if the Comptroller were required to be in possession of the same information as is required in articles 5232a to 5232q, and which is easily obtainable by local officials, and to furnish said information in the published notice provided for in article 5144, as a prerequisite to the validity of a sale to be made by him, the nonresident owner of lands in unorganized counties of this state, with the rarest exception, would escape the forced collection of his taxes thereon, as is clearly indicated in the case of Young v. Jackson, above cited.

[7] We think the proceedings provided for in articles 5137 to 5153, when complied with, sufficient to constitute due process of law, including the notice provided for in article 5144, and we further think the notice published, as shown in the bill of exception and copied above, was in substantial compliance with said article, and that therefore the trial court erred in excluding said evidence.

Appellant, in effect, insists that even with the evidence of publication of the notice of sale excluded, under the other evidence introduced and considered by the trial court, he should have recovered under his plea of three years' limitation.

[8] We are unable to agree with appellant in this contention, for the reason that our courts have uniformly held that neither a pre-emption claim nor an award under our public free school land laws would support the three years' statute of limitation, at least until proof of occupancy, as required by law to entitle an awardee or his assigns to pay for the land and take perfect title thereto, had been made—and we assume until certificate of such fact had been issued by the proper officer, or a deed evidencing conveyance of title had been executed.

Proof of occupancy was made on September 6, 1906, and certificate evidencing that fact was issued October 20, 1906, while the suit was filed September 13, 1909, thus showing that the three years' statute neither after the proof of occupancy was made, nor after certificate showing said fact was issued, was complete. See Pohle v. Robertson et al., 102 Tex. 274, 115 S. W. 1166, and Garrison v. Arnett, 126 S. W. 611, and authorities there referred to.

While in the last clause of the opinion of the Supreme Court, in the case of Pohle v. Robertson et al., this language is used, "Whether or not a purchase of land claimed and sold by the state as part of its school fund, where there has been no other sale, may constitute title or color of title, as against an adverse claim under an older grant or patent, is a question which this case does not present, and hence we intimate no opinion upon it," and the conditions there mentioned would appear to fit the facts of this case, yet, in the light of the reasons given for the rule that neither a pre-emption claim nor an award of public school land would support the three years' statute, we think the language of the Supreme Court in said case cannot be considered as supporting appellant's plea of limitation in this case.

In the case of Clark v. Smith, 59 Tex. 275, Justice West, speaking for the Supreme Court, on page 279, uses this language: "The appellant, under the previous decisions of this court, could not under his pre-emption claim avail himself of the three years' or five years' statute of limitation. No right of pre-emption could be acquired in land held by a private individual under a patent or a location and survey upon which he was by law entitled to a patent. Such pre-emption right can only attach to an actual occupation in accordance with the provisions of law, of vacant land belonging to the state and subject to pre-emption."

Hence the reason for the rule that neither a pre-emption claim nor an award of public school lands will support the three years' statute appears to be based on the question of fact as to whether or not the state at the time of making the award or recognizing the pre-emption really owned the land.

[9] While the tax deed executed by the Comptroller to the state was admitted by the trial court as evidence, the record shows that its introduction as evidence was objected to by appellees, on the ground that its execution had not been proven; the entire deed purports to be copied in the statement of facts, and it does not appear therefrom that it was ever acknowledged, and as the other evidence as shown in the statement of facts is insufficient to prove its execution and delivery, as shown by the record before us, it was not admissible as evidence. Unless appellant by legal evidence shows that the title to the land has been divested out of appellees or those under whom they claim, and vested in the state since the issuance of the patent to Nelson Ketchum in 1880, he could not prevail in this case, as the record now stands before us.

Because of the ruling of the court in excluding as evidence the publication of the notice of sale, the judgment will be reversed, and the cause remanded for further proceedings, and it is so ordered.