MORROW et al. v. CONOWAY.

(Court of Civil Appeals of Texas. El Paso. May 8, 1913. Rehearing Denied May 29, 1913.)

1. APPEAL AND ERROR (§ 1010*)—FINDINGS—CONCLUSIVENESS.

The findings of the trial court supported by evidence, consisting of documentary testimony, are conclusive on appeal, and the court on appeal will not determine the conflict in accordance with the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

2. TAXATION (§ 317*)—ASSESSMENT—QUASI JUDICIAL ACT.

The assessment of taxes is a quasi judicial act which the comptroller may not delegate to a clerk; and, where an assessment for taxation is made by a clerk, a tax sale is void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 525, 526; Dec. Dig. § 317.*]

3. ADVERSE POSSESSION (§ 73*)—COLOR OF TITLE—AWARD OF STATE LANDS.

The inchoate right to purchase school land which one acquired by virtue of an award of the land to him by the Commissioner of the General Land Office is not title or color of title within the three years' statute of limitation, at least until after the three years' occupancy required by law has been completed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 435–442; Dec. Dig. § 73.*]

4. PUBLIC LANDS (§ 173*)—RIGHT TO PURCHASE—LIMITATIONS—STATUTES.

Act March 16, 1905 (Acts 29th Leg. c. 29), prescribing limitation within which any person claiming the right to purchase or lease free school lands shall sue therefor, relates solely to public free school land, and has no reference to adverse claimants to school lands, and does not relate to land previously patent-

ed, and to which the free school fund had no title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Midland County; S. J. Isaacs, Judge.

Action by A. L. Conoway against J. A. Morrow and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Silliman & Neel, of Eldorado, Cornell & Wardlaw, of Sonora, C. E. Dubois, of San Angelo, W. E. Allen, of Mineral Wells, and A. S. Hawkins, of Phœnix, Ariz., for appellants. F. G. Morris, of El Paso, J. M. Caldwell, of Midland, and E. M. Whitaker, of El Paso, for appellee.

HIGGINS, J. Action of trespass to try title by Conoway against Morrow, involving 640 acres of land situate in Upton county known and described as section 5 in block N, patented to Thomas Roche, assignee of the Houston East & West Texas Railway Company, by virtue of certificate 100/503.

This is the second appeal of this case, former opinion appearing in 147 S. W. at page 344.

The cause was tried before the court, resulting in judgment in favor of Conoway. Findings of fact and conclusions of law were filed by the trial court as follows:

## "Findings of Fact.

"I. The land in controversy was patented by the state of Texas to Thomas Roche, assignee of the Houston East & West Texas Railway Company, on July 1, 1881, by virtue of certificate 100/503.

"II. The administrator of the estate of Thomas and Mary Roche, his wife, deceased, sold the land in controversy to the plaintiff, A. L. Conoway, on the 6th day of July, 1910, upon order of sale made by the probate court of Tarrant county, and thereafter upon report and confirmation of said sale by order of said court, and on payment of the consideration therefor, said administrator executed and delivered his deed of conveyance to said land to plaintiff, A. L. Conoway, on the 16th day of July, 1910.

"III. The land in controversy was situated in unorganized county of Upton during and prior to 1890 and 1891, which said Upton county was attached to Midland county for judicial and all other purposes. Said land was not rendered for taxes in Midland county for the year 1890, nor was it rendered for taxes to the comptroller of public accounts of the state of Texas for the year 1890.

"IV. There was levied by the commissioners' court of Midland county taxes upon Upton county property of one-fourth of 1 per cent. on the value of the property situated in said county, for the general fund of said county, and 7½ cents on the $100 valuation

on the property in said county, for the payment of Upton county pro rata of the indebtedness of the parent county, which was Tom Green county, and for expenses of surveying the county boundaries.

"V. There was no assessment by the tax assessor of Midland county of any taxes against the land in controversy for the year 1890.

"VI. The chief tax clerk of the tax department of the comptroller's office during the years 1890 and 1891 assessed the land in controversy for state taxes and for one-fourth of 1 per cent. of the value at which it was assessed for general purposes of Upton county, but made no assessment for special purposes, valuing the land at $960. This action was taken by said chief tax clerk in the name of the comptroller, and carried on the records of the comptroller's office as the acts of the comptroller.

"VII. On the 3d day of November, 1891, said taxes assessed against said land remained unpaid, and the same was sold by D. H. Walsh, chief tax clerk of the comptroller's office, on the 3d day of November, 1891, in front of the comptroller's office, within regular hours, after having duly and legally published notice of said intended sale, as required by law, and the same was bid in for the state public school fund by said Walsh, clerk, as aforesaid, and a deed, sufficient on its face to convey title to said land, was executed to the state for said school fund.

"VIII. A list of land bought by the comptroller for taxes, which list included the land in controversy, was certified by the comptroller to the Commissioner of the General Land Office, as required by law, long prior to the application and award of said land as public school land to W. O. Alexander.

"IX. After the land in controversy was certified by the comptroller to the Commissioner of the General Land Office, same was carried upon the books of the Commissioner of the General Land Office as public free school land, and on July 8, 1908, the Commissioner of the General Land Office awarded said land to W. O. Alexander, as an actual settler, upon legal application made by said Alexander, said land having been previously classified and appraised.

"X. After the award of said land to W. O. Alexander he made settlement thereon, and filed with the Commissioner of the General Land Office his affidavit of settlement, as is required by law, and continued to reside thereon and make his home thereon until July 18, 1910.

"XI. On the last above named date W. O. Alexander conveyed the land in controversy to J. A. Morrow, who assumed Alexander's obligations to the state, and who was substituted as the purchaser of said land in the General Land Office; and the said Morrow

continued to reside upon, and make his home upon, said land until after the expiration of three years from the date of the original purchase.

"XII. Alexander and Morrow, after the purchase of same by Morrow, and prior to the expiration of three years from the date of said purchase, erected on said land valuable improvements worth more than $300.

"XIII. After the expiration of said three years' occupancy Morrow filed with the Commissioner of the General Land Office proof of said occupancy, as required by law, and the Commissioner of the General Land Office issued to said Morrow a certificate of occupancy in due form of law, on August 16, 1911.

"XIV. The defendants J. A. Morrow and W. O. Alexander have had actual, adverse possession of the land in controversy, under said award as public school land, from the state, from the date of said award until the present time.

"XV. W. O. Alexander and J. A. Morrow made valuable improvements on said land in good faith, believing they had a right to acquire said land as public school land, which improvements when completed were of the value of $800.

"XVI. There is no evidence of their value at the time of the trial, nor any evidence as to whether or not the value of the land was increased, nor as to the value of the land with said improvements, nor is there any evidence of the value of the land without said improvements.

"XVII. J. R. Lawrence, agent for plaintiff, A. L. Conoway, on or about the 15th day of July, A. D. 1910, offered to pay the amount of money required by law to redeem said land from the tax sale hereinbefore described, to the comptroller, but was informed by him that as the land had been sold as school land he would not accept a tender of the money necessary to redeem the same.

"From the foregoing findings of fact I deduce the following:

"Conclusions of Law.

"That the plaintiff, A. L. Conoway, showed title which authorizes judgment for him, unless the defendant has shown title.

"The award to the land in controversy and compliance with the law by W. O. Alexander and J. A. Morrow shows sufficient title to the land in controversy in J. A. Morrow to defeat plaintiff's recovery, if the land was public school land when it was certified by the Commissioner of the General Land Office to the comptroller.

"The law did not confer on the comptroller the power to assess county taxes on land in unorganized counties, except for the payment of a part of the parent county's indebtedness, and in this case the comptroller's office assessed county taxes for the general fund only, and sold the land in question, in part, for payment of taxes thus assessed.

"A sale for taxes is void if any part of the taxes for which the sale is made is illegal.

"The power vested in the comptroller to assess state taxes was a quasi judicial power, which must have been exercised by the comptroller in person, and could not have been lawfully delegated to the chief clerk of the tax department; hence the assessment of the state taxes for the payment of which the sale in question was made was void, and will not sustain the sale for state taxes.

"The Commissioner of the General Land Office was not authorized to sell the land in question as public school land, because the right of redemption was revived in the owner by relief acts, and remained in him until after the award to W. O. Alexander, and until the agent for plaintiff offered to redeem, prior to the institution of this suit.

"The award of the land in controversy by the Commissioner of the General Land Office to W. O. Alexander is not such title as will support the three-years statute of limitations.

"The attempted sale by the comptroller, not vesting title to the land in controversy in the public free school fund, Morrow could not hold same against Conoway under the one-year statute of limitation passed by the Thirtieth Legislature.

"No pleadings being filed or evidence offered that the land was increased in value to the extent of the value of the improvements sought to be recovered, and no pleadings or evidence of the value of the land without such improvements and of the value of the land with such improvements, no judgment can be rendered for the defendants for such improvements."

In the seventh finding of fact it is stated that the land "was bid in for the state public school fund by said Walsh, as aforesaid." The trial court inadvertently erred in this finding, as the land was bid in for the state public school fund by the comptroller instead of his chief clerk, Walsh. With this correction, we adopt the findings of fact of the trial court. There are also some unimportant clerical errors, which we have corrected.

[1] Error is assigned to the sixth and seventh findings of fact, wherein the trial court found that the chief tax clerk, Walsh, made the assessment of the land in controversy and made the sale thereof. In support of these assignments it is urged that this court should review the findings of the trial court upon these issues, because all of the testimony bearing upon same is documentary in nature, being shown by the depositions of Walsh and by certificates of fact from the comptroller; that this being the nature of the testimony, this court is therefore in no manner bound to accept the finding of the lower court, even though the testimony should be conflicting, but should determine the conflict in accordance with the

preponderance of the evidence, as this court is in as good a position to pass upon these issues of fact as the lower court. This is not a trial court., and under the Constitution and laws of this state the decision of issues of fact is confided to the district court; and, since the testimony supports the finding of the trial court in respect to the issues noted, we decline to review the same.

[2] The assessment of the taxes was a quasi judicial act, which the comptroller could not delegate to a clerk, and we therefore hold the tax sale void, and that no title whatever passed to the state by virtue of the sale. 27 A. & E. Enc. of Law (2d Ed.) p. 665.

[3] As will be noted from the findings of fact, Morrow is claiming the land by virtue of an award to his vendor, Alexander, made by the Commissioner of the General Land Office, who awarded the same as belonging to the school fund, upon condition of occupancy and improvement, as is required by the laws relating to the sale of such lands. It is urged by appellant that by virtue of this award and the three years' occupancy of the land by himself and Alexander, he has acquired title by limitation under the three-years statute of limitation. But under the decisions it is well settled that the inchoate right which he acquired by his award is not title or color of title sufficient to support the statute, at least, until after the three years' occupancy required by law has been completed. Besson v. Richards, 24 Tex. Civ. App. 64, 58 S. W. 611; Garrison v. Arnett, 126 S. W. 611, writ of error refused by Supreme Court; Johnson v. Knippa, 127 S. W. 905; Wolffarth v. De Lay, 142 S. W. 617; McCown v. McCafferty, 14 Tex. Civ. App. 77, 36 S. W. 517; Williamson v. Brown, 49 Tex. Civ. App. 402, 109 S. W. 412.

In the case of Besson v. Richards (supra) it was said: "The inchoate right of a person whose application for the purchase of school lands has been accepted is not sufficient as title, or color of title, to support the statute of limitation of three years. Such character of title is not within the terms of the statute, and does not show an already existing right to the land. We think this right or title of a school-land purchaser, prior to the completion of his three-years term of occupancy, is no higher than the right of a pre-emptor, and it is well settled that a pre-emption claim is not such title, or color of title, as will support the statute. In the case of Buford v. Bostick, 58 Tex. 70, Judge Bonner, speaking for the court, says: 'Title or color of title, to support a statute prescribing so short a period of limitations, should come within its terms, or plainly within its spirit. A pre-emption claim, until perfected, is not a title defeasible upon the nonperformance of conditions subsequent, but is a mere inchoate right, which may ripen into a perfect title upon the performance of certain conditions precedent. Neither is

157 S.W.—28

it an already existing and certain demand for land issued by the government upon an executed consideration, as a certificate of headright, land warrant, or land scrip, but a mere privilege or right of possession, sufficient under the statute, as against all but those holding under a superior right or title, to maintain trespass to try title, but not sufficient to defeat this superior right or title by limitation.' As before stated, we can see no distinction between the character of the right or title of the pre-emptor and that of the purchaser of school land prior to the completion of the three-years term of occupancy, as up to that time such purchaser holds possession under a contract that contemplates title only upon the performance of certain conditions precedent, independent of the payment of the purchase price. The opinion in the case of Buford v. Bostick, above quoted, is sustained by the case of Sutton v. Carabajal, 26 Tex. 497, and is approved and followed in the case of Clark v. Smith, 59 Tex. 275."

Further discussion of this question would serve no useful purpose, as the authorities cited foreclose the question against appellant's contention.

[4] Neither did the trial court err in holding that the one-year statute of limitation of March 16, 1905, did not apply. This act was entitled, "An act to prescribe a period of limitation within which any person claiming the right to purchase or lease public free school, state university or asylum lands heretofore sold or leased to others, shall bring his suit therefor," and it reads as follows:

"Section 1. Be it enacted by the Legislature of the state of Texas: That hereafter all persons claiming the right to purchase or, lease any public free school lands, or any lands belonging to the state university, or either of the state asylums which have been heretofore or which may be hereafter sold or leased to any other person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this act, and not thereafter.

"Sec. 2. If no suit has been instituted by any person claiming the right to purchase or lease any of said land within the period of time limited in the first section of this act, it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been complied with; provided that nothing in this act shall be construed to affect the state of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

See Acts of Twenty-Ninth Legislature, p.

35, c. 29; Revised Statutes 1911, arts. 5458; 5459.

The land in controversy was not public free school land, and the statute just quoted does not relate to any except such land. It had long since been patented, and to hold that one claiming title thereto by virtue of an unauthorized award from the Land Commissioner, which carried with it no right or title whatever, would vest title in the adverse claimant under the one-year statute would be to give to the statute an interpretation in no wise supported by its language. As we construe the statute, it has reference to adverse claimants to school lands, and cannot be construed as relating to land which had previously been patented, and to which the free school fund had no title whatever.

What has been said disposes of all the assignments of error, and, finding no error, the judgment is affirmed.

McKENZIE, J., did not sit in this case.